IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

UNITED STATES OF AMERICA,          :
                                   :
                                   :
         Plaintiff,                :
                                   :
v.                                 :          CIVIL ACTION NO.
                                   :          1:15-CV-4027-AT
2014 CHEVROLET CORVETTE            :
COUPE, VIN 1G1YH2D7XE5102360,      :
*et al.*,                          :
                                   :
         Defendants.               :

## ORDER AND OPINION

This civil forfeiture case is before the Court on Plaintiff United States and

Claimants Julio and Daniel Martinez's (collectively, the "Parties") cross motions

for summary judgment. [Docs. 60, 61]. The Court originally stayed this matter

pending the resolution of criminal proceedings in the Northern District of

Illinois, *United States v. Delvalle, et al.*, No. 1:16-CR-197 (N.D. Ill. 2016). (Doc.

12). The Court lifted the stay on May 8, 2018 after the Government reported that

Claimant Julio Martinez (referred to Julio) pleaded guilty to conspiracy to

possess with the intent to distribute one kilogram or more of heroin. (Docs. 13,

14). After Claimant Alicia Farah withdrew her claim to the Defendant Mazda and

Defendant 2012 BMW, the Court entered a judgment of forfeiture as to those

Defendants (Docs. 32, 33). The Parties conducted discovery as to the remaining

11 Defendant vehicles, and filed cross motions for summary judgment on August 22, 2019.

## I.   Legal Standard

The Court must grant summary judgment if the record shows "that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual issue is genuine if there is sufficient evidence for a reasonable jury to return a verdict in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A factual issue is material if resolving the factual issue might change the suit's outcome under the governing law. *Id.* The motion should be granted only if no rational fact finder could return a verdict in favor of the non-moving party. *Id.* at 249.

When ruling on the motion, the Court must view all the evidence in the record in the light most favorable to the non-moving party and resolve all factual disputes in the non-moving party's favor. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). The moving party need not positively disprove the opponent's case; rather, the moving party must establish the lack of evidentiary support for the non-moving party's position. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). If the moving party meets this initial burden, in order to survive summary judgment, the non-moving party must then present competent evidence beyond the pleadings to show that there is a genuine issue for trial. *Id.* at 324-26. The essential question is "whether the evidence presents a

sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52.

The standard of review for cross-motions for summary judgment does not differ from the standard applied when only one party files a motion, but simply requires a determination of whether either of the parties deserves judgment as a matter of law on the facts that are not disputed. *Am. Bankers Ins. Group v. United States*, 408 F.3d 1328, 1331 (11th Cir. 2005). The Court must consider each motion on its own merits, resolving all reasonable inferences against the party whose motion is under consideration. *Id.* The Eleventh Circuit has explained that "[c]ross-motions for summary judgment will not, in themselves, warrant the court in granting summary judgment unless one of the parties is entitled to judgment as a matter of law on facts that are not genuinely disputed." *United States v. Oakley*, 744 F.2d 1553, 1555 (11th Cir. 1984). Cross-motions may, however, be probative of the absence of a factual dispute where they reflect general agreement by the parties as to the controlling legal theories and material facts. *Id.* at 1555-56.

## II.    **Factual Background**

Keeping in mind that when deciding a motion for summary judgment, the Court must view the evidence and all factual inferences in the light most favorable to the party opposing the motion, the Court provides the following statement of facts. *See Optimum Techs., Inc. v. Henkel Consumer Adhesives,*

*Inc.*, 496 F.3d 1231, 1241 (11th Cir. 2007) (observing that, in connection with summary judgment, court must review all facts and inferences in light most favorable to non-moving party). This statement does not represent actual findings of fact. *Priester v. City of Riviera Beach*, 208 F.3d 919, 925 n.3 (11th Cir. 2000) ("We . . . have repeatedly stressed that the 'facts', as accepted at the summary judgment stage of the proceedings, may not be the 'actual' facts of the case."). Instead, the Court has provided the statement simply to place the Court's legal analysis in the context of this particular case or controversy.

The Court notes that the Parties have made the process of compiling the factual background of this case difficult. The Parties both failed to follow the Court's procedure in its Standing Order requiring responses to Statements of Undisputed and Material Facts to restate the fact before setting forth the response. (Doc. 2 at 23). Claimants have also unhelpfully objected to every single one of the Government's Statements, including those based on admissions in Claimants' Answer.

Furthermore, the Parties have presented a bevy of background information to the Court ranging from a period of over 30 years, and have done so in a piecemeal, non-chronological way. As such, the Court has found it helpful to place the events on a timeline. The Court is aware that Claimants have raised several objections to the admissibility of many of these events. The Court's placement of events on the timeline does not constitute a finding admitting the underlying evidence, but is solely for clarity and convenience.

**TIMELINE**

| DATE | EVENT | RECORD |
|------|-------|--------|
| 1983 | While working as a runner at the Chicago Board of Trade, Claimant Julio receives $1.8 million from six stockbrokers in exchange for not cooperating with the federal government's Operation Closing Bell investigation into stock market fraud. | (USA's MSJ Ex. 8-2, Transcript of Interview at 74:13-17, 76:1-5, 77:12-14, Doc. 60-10). |
| 1986 | Claimant Julio was convicted of delivering drugs in the Circuit Court of Cook County, Illinois. | (Martinez, Sr. Obj. to PSR, USA's MSJ Ex. 6, Doc. 60-8; 1986 Conviction, USA's MSJ Ex. 30, Doc. 60-32). |
| 1988 | Claimant Julio was released from prison, works as a spray painter for two years. | (Ex. 8-2 at 80:1-4; Obj. to PSR at 2-3, Doc. 60-8. |
| 1990 | Claimant Julio opens a Dollar Store in Illinois. Eventually opens a second location. | Ex. 8-2 at 80:1-4; Obj. to PSR at 2-3, Doc. 60-8. |
| 1995-1996 | Claimant Julio sells the Dollar Stores, works for two years for First Metropolitan Mortgage | *Id.* |
| 1996-2000 | Claimant Julio opens his own mortgage company, M&R Mortgage Solutions. | Ex. 8-2 at 80:1-4; Obj. to PSR at 2-3, Doc. 60-8; Ex. 8-2 at 48:7-20. |
| 2009 | Claimant Julio claims unemployment from state of Illinois. | Ex. 8-2 at 48:2-6. |
| Jan. 2010 | Claimant Julio contends he sold a building he owned in Chicago netting $880,000. | Ex. 8-2 at 29:14-15, 71:18-19. |
| Feb. 2010 | Claimant Julio contends he sold a lot he owned netting $195,000. | Ex. 8-2 at 29:15-20, 71:18-19. |
| Aug. 2010 | Tax returns show Claimant Julio sold real property resulting in a capital gain of $91,309. | Claimant's Discovery Responses, USA.'s Ex. 26, Doc. 60-28. |
| Oct. 2010 | HUD-1 shows that Claimant sold Maplewood property in Chicago with $0 cash to seller. | *Id.* |
| 2010 | Claimant Julio moves to Atlanta, at some point sets up Rada Designz, a company that imports jeans from Colombia. | Ex. 8-2 at 21:9–26:10, 47:19-24. |
| 2010-2015 | Per Edwin DelValle's guilty plea, during this period, DelValle bought cocaine and heroin from Claimaint Julio. DelValle | DelValle Plea Agreement, USA.'s Ex. 12 at 3, Doc. 60-14. |

| | stated that he bought about seven kilograms of cocaine and 300 grams of heroin from Claimant Julio. | |
|---|---|---|
| Feb. 2011 | Claimant Julio put $40,000 down payment towards purchasing Rivermark Court property, titled in Ziad Farah's name. | USA's Ex. 20, Ex. 8-2 34:25-36:2, 70:25-71:8. |
| Apr. 2012 | Claimant Julio purchases Grassy Trace property for $71,000. | USA's Ex. 19; Ex. 8-2 at 92:10-93:8. |
| Feb. 2012 | Claimant Julio sold one or more real properties resulting in a capital gain of $117,120.<br><br>HUD-1 statement indicates Claimant sold N. Albany Ave property in Chicago with cash to seller of $309,227.57 | Ex. 26. |
| Dec. 2012 | Claimant Julio purchases Foxxie Boutique in Lawrenceville for $144,200. At some point invested $38,000 into it. | USA's Ex. 17; Ex 8-2 at 42:18-43:6. |
| Late 2013 to Feb. 2015 | Per his plea (see below) Claimant Julio admits that he conspired to possess heroin and cocaine with intent to distribute during this time. | Julio Martinez, Sr. Plea Declaration, USA's MSJ Ex. 2, Doc. 60-4. |
| Nov. 2014 | Claimant Julio purchases Azalea Drive property for $295,050. Spent approx. $45k on improvements. | Ex. 18, Ex. 8-2 at 37:5-23, 37:11-17. |
| Feb. 14, 2015 | Agents allegedly observe Claimant Julio and Ziad Farah put bags containing 2.2 kilograms of heroin and $128,460 in currency into a parked Audi. | Vuong Decl., Ex. 8. |
| Nov. 2016 | Grand jury in N.D. Ill. indicts Claimant Julio, DelValle, and others for conspiracy to possess with intent to distribute cocaine and heroin | *United States v. Delvalle et al.,* No. 1:16-cr-197 (N.D. Ill 2016). |
| July 2017 | Claimant Julio enters a plea of guilty to conspiracy to possess with the intent to distribute cocaine and heroin. | Julio Martinez, Sr. Plea Declaration, USA's MSJ Ex. 2, Doc. 60-4. |

On June 23, 2015, DEA and IRS agents arrested Claimant Julio pursuant to a State of Georgia arrest warrant for narcotics trafficking. (Vuong Decl., USA's Ex. 8 ¶ 13.) Several of the Defendant Vehicles were seized at his residence. (*Id.*) Claimant Julio was initially interviewed by agents at his residence, but denied involvement in the February 14, 2015 transaction, so agents terminated the interview. (*Id.* ¶ 15.) According to DEA Special Agent Vuong, Julio later agreed to cooperate if Alicia Farah, who he has variously referred to as his girlfriend and his common law wife, were present. (*Id.* ¶ 15; USA's Ex. 6 at 3.) Farah gave the agents consent to search the Foxxie Boutique Property, where several of the Defendant Vehicles were seized. (USA's Ex. 8 ¶¶ 18–20.) The remaining Defendant Vehicles were apparently being held at dealerships, and were seized from the dealerships. (*Id.* ¶¶ 21–23.) Agents then transported Claimant Julio to the Gwinnett County Police Department, where he was interviewed at length. (*Id.* ¶¶ 24–25.)

The tax returns filed by Claimant Julio show his adjusted gross income for the following years:

| 2009 | $-16,951 |
|------|----------|
| 2010 | 80,354 |
| 2011 | -11,665 |
| 2012 | -91,846 |

| 2013 | -46,129 |
|------|---------|
| 2014 | 58,630  |

(Tax Returns, USA's MSJ Ex 26, Doc. 60-28).

The following table, representing the Defendant cars remaining in this case, is compiled from the Government's Statement of Undisputed Material Facts, Paragraphs 130 – 142.

| Year, Make Model and Vin | Nickname | Purchased |
|---|---|---|
| 2014 CHEVROLET CORVETTE COUPE, VIN 1G1YH2D7XE5102360 | 2014 Chevrolet | Oct. 4, 2013 |
| 2013 BUICK REGAL GS, VIN 2G4GV5GV7D9218619 | 2013 Buick | Dec. 20, 2013 |
| 2013 LINCOLN MKZ, VIN 3LN6L2G92DR803525 | 2013 Lincoln | Apr. 5, 2013 |
| 1972 BUICK GS STAGE ONE CONVERTIBLE, VIN 4G67V2H185705 | 1972 Buick | Sep. 30, 2011 |
| 1970 BUICK GS COUPE, VIN 444370H122064 | 1970 Buick #1 | ? |
| 1970 BUICK GS455, VIN 446370H296412 | 1970 Buick #2 | Nov. 14, 2011 |
| 1970 BUICK SKYLARK GS, VIN 434370H322283 | 1970 Skylark | May 5, 2013 |
| 1970 CHEVROLET MONTE CARLO SS, VIN 138570F102200 | 1970 Chevrolet | Feb. 27, 2012 |
| 1970 CHEVROLET EL CAMINO, VIN 136800K151251 | 1970 El Camino | Jul. 23, 2013 |
| 1970 PONTIAC GTO, VIN 242370P247267 | 1970 Pontiac | Jul. 16, 2012 |
| 2012 FISKER KARMA, VIN YH4Kl 4AA5CA001248 | Fisker Karma | Jul. 9, 2013 |

Claimant Daniel Martinez (referred to as Daniel) filed a verified claim contending that he is the owner of the 2013 Buick on January 8, 2010. (Doc. 10.) Claimant Julio filed a verified claim for the remaining cars. (Doc. 9.)

## III.    Discussion

Plaintiff United States seeks forfeiture of the remaining 11 Defendant Vehicles under 18 U.S.C. § 981(a)(1)(C), which provides for forfeiture of "property, real or personal, which constitutes or is derived from proceeds

traceable to a violation" of certain statutes or any offense constituting "specified unlawful activity" under 18 U.S.C. § 1956(c)(7). Plaintiff also seeks forfeiture under 21 U.S.C. § 881(a)(6) which provides for forfeiture of any thing of value (including money) "furnished by any person in exchange for a controlled substance or listed chemical in violation of this subchapter, all proceeds traceable to such an exchange, and all moneys, negotiable instruments, and securities used or intended to be used to facilitate any violation of this subchapter."

This forfeiture proceeding was initiated after the effective date of the Civil Asset Forfeiture Reform Act ("CAFRA"), 18 U.S.C. § 983 and is therefore governed by CAFRA. "The provisions of CAFRA materially altered the various burdens of proof in civil forfeiture actions filed in federal courts." *United States v. $63,788.00 More or Less in United States Currency*, No. 17-0058-CG-N, 2018 WL 1629114, at *6, 2018 U.S. Dist. LEXIS 57145, at *14 (S.D. Ala. Apr. 3, 2018), *appeal dismissed*, No. 18-12320-K, 2018 WL 4232053 (11th Cir. June 26, 2018) (quoting United States v. $52,000.00, More or Less, in United States Currency, 508 F. Supp. 2d 1036, 1039 (S.D. Ala. 2007) (citation and internal quotation omitted). "Under CAFRA, the burden of proof is on the Government to establish, by a preponderance of the evidence, that the property is subject to forfeiture." *Id.* (quoting $52,000.00, 508 F. Supp. 2d at 1039) (internal quotations omitted). "The Government may use evidence gathered after the filing of a complaint for forfeiture to meet its burden." *Id.* (quoting *$52,000.00* and citing 18 U.S.C. § 983(c)(2)) (internal quotations omitted). "Once the Government has met its

burden, the burden then shifts to the claimant to prove by a preponderance of evidence a defense to the forfeiture or to prove that the property is not otherwise subject to forfeiture." *Id.* (internal quotations omitted).

Judge DuBose has helpfully explained the summary judgment procedure  in a CAFRA-governed case as follows:

> The Government, as the party moving for summary judgment, bears the initial burden of demonstrating the absence of a genuine issue of material fact. This summary judgment standard dovetails with the standards set forth in CAFRA to provide that where the government meets its initial burden to show by a preponderance of the evidence that the property subject to forfeiture was substantially connected to drug trafficking, the burden shifts to the Claimant to demonstrate a defense to the forfeiture or to prove that the property is not otherwise subject to forfeiture. Where the Government has met its burden by a preponderance of the evidence, and the Claimant fails to sustain his burden, the entry of summary judgment is proper as no genuine issue of material fact remains to preclude the entry of summary judgment.

*$52,000,* 508 F. Supp. 2d at 1041.

The Parties contend they are each entitled to summary judgment. The Court will first address Claimants' arguments, and then will turn to the Government's arguments. Claimants raise the issue of traceability or substantial connection to the criminal offense both in their own motion and in response to the Government's motion. The Court will address traceability in the final section on the Government's motion.

### A.    Claimant's Motion for Summary Judgment

### 1.    Claimants' contention that the search and seizure was unlawful

Claimants contend that the search of the Foxxie Boutique property was unlawful, and accordingly, the evidence gleaned from that search should be suppressed. The Fourth Amendment applies to government searches in civil forfeiture proceedings. *United States v. Ladson*, 774 F.2d 436, 439-40 (11th Cir. 1985).

Claimants assert that the search was unlawful because (1) "[t]he government had only obtained a warrant to arrest Claimant Julio Martinez and not to search what was found at his residence" and "[t]he Government relied on [the consent of] Claimant's girlfriend, Alicia Farah" to search the property, but Claimants contend she was not the lawful owner. (Clmt.'s Br. MSJ at 6).

The Government responds that Claimant's argument should have been made by a motion to suppress under the Supplementary Civil Rule G(8)(a), and that such a motion would be untimely under the Court's Local Rules. Local Rule 7.1(A) provides that, other than specific listed motions, "[a]ll other motions must be filed WITHIN THIRTY (30) DAYS after the beginning of discovery unless the filing party has obtained prior permission of the Court to file later." The Court is aware of another forfeiture case from this district where a motion to suppress filed more than 30 days from the opening of discovery was held untimely. *United States v. $33,330.00 in United States Currency*, 901 F. Supp. 2d 1354, 1360

(N.D. Ga. 2012). The Court thinks Local Rule 7.1(A) is best read together with Local Rule 16.2, which requires the parties to prepare a Joint Preliminary Report and Discovery Plan, which sets forth, among other things, anticipated filing times for motions. LR 16.2(7), NDGa. That rule, which provides the parties the opportunity to confer about expected pre-trial motions and submit proposed filing deadlines to be embodied in a scheduling order, does not apply to proceedings exempt from initial disclosures, such as the instant case. Fed. R. Civ. P. 26(a)(1)(B)(ii) (exempting "a forfeiture action in rem arising from a federal statute" from initial disclosures). Local Rule 7.1(A) was likewise probably not intended to apply to actions exempt from initial disclosures.

In any case, the Court agrees with the Government's secondary argument, that suppression of the search is likely moot. "The 'body' or identity of a defendant or respondent in a criminal or civil proceeding is never itself suppressible as a fruit of an unlawful arrest, even if it is conceded that an unlawful arrest, search, or interrogation occurred. . . . A similar rule applies in forfeiture proceedings directed against contraband or forfeitable property." *I.N.S. v. Lopez-Mendoza*, 468 U.S. 1032, 1039–40 (1984). It is unclear exactly what evidence Claimants hope to exclude under the Fourth Amendment. The search did not itself produce evidence that the Defendant Vehicles were proceeds of drug activity. The Government's arguments do not center on any physical characteristic of the cars themselves, but Claimant Julio's financial condition, statements of his co-conspirators, and his criminal convictions. Consequently,

under these circumstances, Claimants cannot exclude the Defendant Vehicles themselves. Accordingly, this portion of the motion is **DENIED**.

### 2.    Daniel's innocent owner defense

Claimant Daniel contends that he is the owner of the 2013 Buick and contends that he is entitled to summary judgment on his innocent owner defense. "An innocent owner's interest in property shall not be forfeited under any civil forfeiture statute. The claimant shall have the burden of proving that the claimant is an innocent owner by a preponderance of the evidence." 18 U.S.C. § 983(d)(1).

The Government contends that the 2013 Buick was purchased with drug proceeds, and accordingly, Claimant Daniel must meet the definition of an "innocent owner" under 18 U.S.C. § 983(d)(3)(A). That provision states that "[w]ith respect to a property interest acquired after the conduct giving rise to the forfeiture has taken place, the term 'innocent owner' means a person who, at the time that person acquired the interest in the property . . . was a bona fide purchaser or seller for value . . . [and] did not know and was reasonably without cause to believe that the property was subject to forfeiture." Courts have noted that "a person who receives property subject to forfeiture as a 'gift' cannot be a bona fide purchaser for value. *United States v. Brown*, 509 F. Supp. 2d 1239, 1246 (M.D. Fla. 2007) (citing *United States v. Kennedy*, 201 F.3d 1324, 1335 (11th Cir. 2000)).

The evidence produced by the Government in support of its Motion for Summary Judgment shows that the 2013 Buick was purchased on December 20, 2013 for $34,965. (USA's Ex. 25, Doc. 60-27 at 8, 12). The purchase price was paid in part by a trade in of Claimant Julio's 2012 Camry. (*Id.*, Doc. 60-27 at 12.) The remaining $15,543 was paid with a $1,543 check drawn on Foxxie Boutique LLC, a $5,500 cashier's check and $8,500 in cash. (*Id.*, Doc. 60-27 at 23.) In response to discovery, Claimant Daniel stated that he did not work during 2010 through 2015, as he was a student. (*Id.*, Doc. 60-27 at 3.) Claimants have failed to produce any documents showing that Daniel paid any value for the car, rather than receiving it as a gift from Julio. The undisputed record shows that Daniel is not a bona fide purchaser of the 2013 Buick. Accordingly, Claimant's Motion for Summary Judgment **DENIED** as to this affirmative defense, and the Government's Motion for Summary Judgment is **GRANTED** as to this affirmative defense. [1]

## B.    United States' Motion for Summary Judgment

As the Court did not grant Claimants' motion for summary judgment, the Court turns next to the Government's motion. Claimants have raised several evidentiary issues in response to the Government's motion, which the Court addresses first in the following sections before addressing the merits.

---

[1] The Government appears to rely on statements made in an affidavit filed in Gwinnett County Superior Court to establish that Claimant Julio has claimed ownership of the Defendant 2013 Buick. The Court need not reach the question having granted summary judgment against Claimant Daniel on the issue.

### 1.    Exclusion of conviction under 404(b)

Claimants contend that Claimant Julio's conviction should be excluded under Federal Rule of Evidence 404(b). That rule prohibits the admission or use of "[e]vidence of a crime, wrong, or other act" in order "to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Essentially, Claimants contend the Government is making an improper propensity argument by attempting use his admission to conspiring to possess drugs with the intent to distribute them from 2013 to 2015 to show that he is a person who traffics in drugs, and therefore he likely bought Defendant Vehicles with money he made from drug trafficking he committed on other occasions before 2013.

In response, the Government does not appear to contest that Rule 404(b) is applicable to the conviction, but instead contends that it "is offering evidence of his conviction to show motive, intent, knowledge, absence of mistake, or lack of accident." (Reply 5). Rule 404(b) allows evidence of a conviction for other purposes than propensity, "such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2). Moreover, the Government contends that "[t]his evidence is being offered to rebut Martinez's claim that the Defendant Vehicles were purchased with legitimate income." (Reply at 6). However, the Government bears the initial burden of showing "by a preponderance of the evidence, that the property is subject to forfeiture." 18 U.S.C. § 983(c)(1). The Government cannot

use rebuttal evidence or evidence offered for a limited purpose under Rule 404(b) to meet its initial burden as to the pre-2013 Defendant Vehicles. The Court will take up whether either of Claimant Julio's convictions would be admissible for the limited purposes specified by the Government closer to trial.

### 2.   Exclusion of co-conspirator's plea as hearsay

Claimants contend that most of the Defendant cars were purchased prior to the commencement of Claimant Julio's admitted criminal activity, and thus the Government has not met its burden of showing a substantial connection to criminal activity as to those cars. In his plea declaration, Julio admits that he engaged in a conspiracy to possess and distribute heroin "[b]eginning in or around late 2013 and continuing until in or about February 2015." (J. Martinez Plea Decl., USA's MSJ Ex. 2, Doc. 60-4). The vast majority of the remaining Defendant Vehicles were purchased prior to "late 2013."

In response, the Government offers the plea agreement of Claimant Julio's co-conspirator, Edwin DelValle. In the agreement, DelValle admits to the following criminal conduct:

> Beginning in or about 2010 and continuing until in or about February 2015, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere, defendant EDWIN DELVAILE, Sergio Chavez, Julio Martinez, Sr., Julio Martinez, Jr., Ziad Farah, and "Tall Boy" did conspire with each other and with others to knowingly and intentionally possess with intent to distribute and distribute a controlled substance, namely, a quantity of a mixture and substance containing a detectable amount of cocaine, a Schedule II Controlled Substance, and one kilogram or more of a mixture and substance containing a detectable amount of heroin, a Schedule I Controlled Substance, in violation of Title 21, United States Code,

Section841(a)(1), all in violation of Title 21, United States Code, Section 846.

More specifically, from around 2010 until February 2015, DELVALLE agreed to buy and did buy cocaine and heroin from Julio Martinez, Sr. and "Tall Boy." DELVALLE sometimes paid for the cocaine and heroin on credit.

(DelValle Plea Agm't, USA's MSJ Ex. 12 at 3, Doc. 60-14). Martinez contends that this evidence is inadmissible hearsay.

In response, the Government cites *$291,828.00 in United States Currency*, 536 F.3d 1234, 1237 (11th Cir. 2008), a post-CAFRA case, for the proposition that the Court "may use both circumstantial evidence and hearsay" in consideration of a civil forfeiture matter. Claimants argue in response that other circuit courts have held that hearsay is not admissible in a case governed by CAFRA. *United States v. $92,203.00 in U.S. Currency*, 537 F.3d 504, 510 (5th Cir. 2008) ("[H]earsay is no longer admissible for purposes of a merits decision in a civil forfeiture case."); *accord United States v. Sum of $185,336.07 U.S. Currency Seized from Citizen's Bank Account L7N01967*, 731 F.3d 189, 198 n.8 (2d Cir. 2013) ("However, in a civil forfeiture proceeding under CAFRA, there is no basis for admitting the "double" hearsay contained in Officer Tuttle's affidavit.").

Judge Granade of the Southern District of Alabama recognized the conflict in authorities in *United States v. $63,788*, noting that "[t]here appears to be little consensus among the courts in this circuit on this issue. No. CV 17-0058-CG-N, 2018 WL 1629114, at *5 n.4 (collecting cases on both sides). The Fourth Circuit has also acknowledged the split in authority caused by the Eleventh Circuit's

apparent recitation of a pre-CAFRA legal standard in *$291,828. United States v. Currency, U.S., $147,900.00*, 450 F. App'x 261, 264 (4th Cir. 2011) ("Given that courts routinely permitted the Government to rely on hearsay evidence in forfeiture proceedings prior to CAFRA, and only one appellate court has explicitly recognized that hearsay evidence is no longer admissible following CAFRA, we cannot hold admission of the evidence to be plain error.") (citing *United States v. $92,203.00 in U.S. Currency,* 537 F.3d 504, 510 (5th Cir.2008) and *$291,828.00,* 536 F.3d at 1237) (internal citations omitted).

The question is a thorny one, but one the Court need not take up at this point. The Court "may consider a hearsay statement in passing on a motion for summary judgment if the statement could be reduced to admissible evidence at trial or reduced to admissible form." *Macuba v. Deboer*, 193 F.3d 1316, 1322–23 (11th Cir. 1999) (internal quotations omitted). And even if CAFRA permits the Government to use the DelValle plea agreement without satisfying an exception to the rule against hearsay, the discrepancy in the conspiracy commencement date between the DelValle agreement (in or about 2010) and Claimant Julio's plea declaration (in or about late 2013) creates a dispute of fact that cannot be resolved on summary judgment.

### 3.   Exclusion of Claimant Julio's statement as improper under Miranda

Claimants contend that Claimant Julio's June 23, 2015 recorded interview is inadmissible under the Supreme Court's decision in *Miranda v. Arizona*, 384

U.S. 436, 467 (1966). Pursuant to *Miranda*, "an individual in police custody must be apprised of his Fifth Amendment rights before being subjected to interrogation." *United States v. Harrold*, 679 F. Supp. 2d 1336, 1343 (N.D. Ga. 2009). However, "[a] defendant may waive his rights if the waiver is made voluntarily, knowingly, and intelligently." *Id.* at 1349 (citing *Miranda*, 384 U.S. at 444). Claimants point out that the interview transcript itself does not contain a *Miranda* warning, and contend that the Government's failure to provide evidence of Claimant Julio's waiver of his *Miranda* rights bars evidence of his confession.

In the Government's Reply, it provided for the first time a copy of the Form DEA-13 Advice of Rights which appears to be signed by Claimant Julio. The Court ordered supplemental briefing on (1) whether the Form DEA-13 Advice of Rights should be excluded from consideration on summary judgment and if so, the grounds for such requested exclusion; and (2) whether Claimant Julio Martinez's recorded confession is admissible under the Supreme Court's decision in *Miranda v. Arizona*, 384 U.S. 436, 467 (1966) or other closely related Fourth Amendment voluntariness principles. (Doc. 74.)

Claimants first contend that Form DEA-13 should be excluded under Rule 37(c). That rule provides that if a party fails to make a required disclosure or to supplement a discovery response, "the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). Claimants' Interrogatory No. 11 asked the Government to "[d]escribe

any and all facts, evidence and witnesses that support the allegation that Julio

Martinez was provided DEA 13/Advice of Rights on or about June 23, 2015."

(Clmts.' Supp. Br.  Ex. A, Doc. 75-1.) The Government's response was that the

request was:

> unduly burdensome, overbroad, and not proportional to the needs of
> the case. Subject to and without waiver, Plaintiff states that Special
> Agent Lyhn Vuong and IRS-CI Special Agent Wesley Cooper may
> have information related to this request. Further, Plaintiff responds
> that a video of Claimant Julio Martinez's interview is being
> produced.

(*Id*. Ex. B, Doc. 75-2.) The Government later amended its interrogatory

responses, but the response to No. 11 was unchanged.

The Government admits that it did not provide a copy of the form in

discovery, but insists its failure to do so was non-willful. (USA's Supp. Br. at 3,

Doc. 77.) The Government states that its counsel did not have a copy of the form

at the time the case was filed, as it was secured in the DEA's evidence vault. (*Id*.)

It also argues that the failure was harmless, because the contents of the recorded

interview and the allegations in the Government's complaint were sufficient to

permit the filing of a motion to suppress under *Miranda* and Supplemental Rule

G(8). Claimants contend that the absence of the evidence that the *Miranda*

warning was given affected their earlier settlement positions and preparation of

their case, including their summary judgment response which relied on the

absence of a recorded *Miranda* warning.

The consequence of exclusion may be automatic under Rule 37, and "[the

burden of establishing that a failure to disclose was substantially justified or

harmless rests on the nondisclosing party." *Mitchell v. Ford Motor Co.*, 318 Fed. Appx. 821, 824 (11th Cir. 2009) (citing *Leathers v. Pfizer, Inc.*, 233 F.R.D. 687, 697 (N.D.Ga.2006)). The Court may also impose other appropriate sanctions, including instructing the jury about the failure to disclose.

The Court agrees with Claimants that the failure to disclose the Form DEA-13 was not substantially justified, having been in the DEA's possession from the time the forfeiture case was filed. The Court also agrees with Claimants that the eleventh-hour disclosure has certainly handicapped their ability to conduct discovery about the form, negotiate a settlement, and devote space in their brief to argument regarding this issue. The Court is left with the conclusion that the Form DEA-13 must be excluded.[2]

Aside from the Form DEA-13, the record still contains the sworn declaration of Agent Vuong that a *Miranda* warning was given. However, the Court must grapple with the absence of the *Miranda* warning in the transcript of the interview. For the purpose of the Government's motion for summary judgment, the Court is required to draw all reasonable inferences in favor of the Claimants. The absence of the *Miranda* warning in the transcript raises a reasonable inference that such a warning was not given.[3] Taken against Agent

---

[2] Likewise, the Court may decline to consider the Form DEA-13 because it was first attached to a reply brief. *Tafal v. Lion Antique Invs. & Consulting Servs.*, 459 F. App'x 847, 849 (11th Cir. 2012).

[3] The Government contends that the signing of the form was not recorded because it occurred at his residence, and DEA policy prohibits recording interviews at a residence. (Doc. 77 at 5 n.3, citing Declaration of Christopher Richards ¶ 4.) But the DEA could have confirmed that the form was signed and that Claimant Julio's signature was authentic once the interview had begun. In any case, Agent Richards's declaration that the form was signed in his presence is merely

Vuong's declaration that a warning was in fact given, the Court is left with a factual dispute which it cannot resolve on summary judgment. Accordingly, the interview and transcript are not dispositive for summary judgment purposes.[4]

### 4. Traceability/Substantial Connection to Criminal Offense

The Court lastly considers the arguments of Claimants and the Government regarding the issue of traceability, including whether the Government has demonstrated a substantial connection or "nexus" to an act prohibited under 18 U.S.C. § 981(a)(1) or 21 U.S.C. § 881(a)(6). Claimants first contend that summary judgment is appropriate here because the Complaint fails to plead a substantial connection to a relevant criminal offense. Under Supplemental Rule of Civil Procedure G, a complaint in a forfeiture action must:

(a)    be verified;

(b)    state the grounds for subject-matter jurisdiction, in rem jurisdiction over the defendant property, and venue;

(c)    describe the property with reasonable particularity;

(d)    if the property is tangible, state its location when any seizure occurred and—if different—its location when the action is filed;

---

cumulative with Agent Vuong's similar declaration, which the Court has held is sufficient to create a factual dispute precluding summary judgment. Cumulative evidence does not defeat a factual dispute, as it is not the Court's job to weigh credibility on summary judgment.

[4] This ruling is driven by the Rule 37 disclosure issue and the summary judgment standard. The Court does not reach the question of whether the Government may use the video interview or transcript, or a portion of either, at trial. This, and several other evidentiary disputes in this case, raise important questions the Court would have to tackle if this case went to trial. However, Claimant Julio should seriously consider the effect that the Government's proffered evidence would have if it reached a jury as well as the personal risk of further inquiry into his conduct in the 1980's. The Court encourages both the Government and Claimants to take seriously its invitation to mediate this dispute under the current circumstances.

(e)     identify the statute under which the forfeiture action is
         brought; and

(f)     state sufficiently detailed facts to support a reasonable belief
         that the government will be able to meet its burden of proof at
         trial.

Supp. R. Civ. P. G(2). The Government contends that it has pled the following

facts which sufficiently "support a reasonable belief that the government will be

able to meet its burden of proof at trial":

(1) Martinez was the target of a DEA drug investigation;

(2) Martinez was involved in a transaction involving two kilograms
of heroin and $128,460 in United States currency in February 2015;

(3) Martinez and his girlfriend, Alicia Farah, owned several
properties in Chicago before moving to Atlanta but had lost them to
foreclosure;

(4) Martinez had an ownership interest in two businesses in Atlanta
but neither were making much money as the first couple of years in
Atlanta had been bad;

(5) Farah had not reported any income from one business on her tax
returns;

(6) the Georgia Department of Labor had no record of any reported
wages for Martinez or Farah; and

(7) Martinez previously went to jail for drug trafficking.

(USA's Resp. to Clmt.'s MSJ at 8–9, Doc. 63 (citing Compl., Doc. 1 at ¶¶ 16–140,

151–164.)

      "[B]ecause Supplemental Rule G(2) governs the pleading standard for civil

asset forfeiture cases, rather than Federal Rule of Civil Procedure 8, the standard

enunciated and clarified in *Twombly* and *Iqbal* does not govern the sufficiency of

such complaints." *United States v. $134,972.34 Seized from FNB Bank, Account No.-£5351*, 94 F. Supp. 3d 1224, 1229 (N.D. Ala. 2015). Instead, the plain language of the rule governs. *Id.* The Court agrees with the Government that, based on the above allegations, the Government has pled "sufficiently detailed facts to support a reasonable belief that the government will be able to meet its burden of proof at trial." Fed. R. Civ. P. Supp. R. G(2)(f).

The Court next turns to whether the evidence in this case, as limited by the foregoing rulings, supports judgment against any or all of the Defendant Vehicles as a matter of law.  For the reasons that follow, the Court concludes that in light of Claimant Julio's admission in his plea agreement that he was engaging in criminal activity beginning in late 2013 and the absence of evidence that the Defendant Vehicles purchased during that time were legitimately obtained, the Government has met its burden on summary judgment to show traceability to forfeitable conduct as to two of the Defendant Vehicles. However, fact disputes exist as to the remaining cars for at least three reasons

First, the Government contends that the Court can infer that all of the cars were proceeds of drug trafficking because "Martinez is a convicted drug trafficker responsible for distributing kilogram quantities of heroin and cocaine from at least 2013 through June 23, 2015, and that conviction is directly related to the seizure of all of the Defendant Vehicles." (USA's Br. MSJ at 7.) The Government also notes that "Martinez has a conviction from 1986 for delivering cocaine while working at the Chicago Board of Trade." (*Id.* at 8, citing USA's Exs. 6, 30.)

"Evidence that claimants are generally engaged in the drug business over a period of time, have no visible source of substantial income, use cash for large purchases, and are nominee owners is all probative evidence of probable cause, as is a history of drug violations." *United States v. Carrell*, 252 F.3d 1193, 1201 (11th Cir. 2001) (pre-CAFRA). However, as the Court observed earlier, Rule 404 precludes using Claimant Julio's admission to drug activity from 2013 to 2015 (as well as his earlier 1980's conviction) to prove that he acted in conformity on other occasions, and the Government appears to have disclaimed its use of the convictions for this purpose.[5] The evidence may be admissible for other purposes, but as the Court held above, the Government cannot meet its burden on summary judgment solely by relying on evidence offered for those limited purposes.

Relatedly, the Government contends that even if Defendant Vehicles were purchased from the proceeds of real estate sales, those proceeds are traceable to money he was paid by stockbrokers to buy his silence stemming from his conviction in the 1980's. (USA's Br. MSJ at 16.) This argument relies extensively on Claimant Julio's interview transcript, which the Court has deemed inconclusive for summary judgment purposes. Aside from relying on Claimant's interview transcript, the Government attempts to get at this point in a few other ways. First, the Government cites to the purported implausibility of Claimant

---

[5] The Government argues that Claimant Julio pled guilty to a grand jury indictment that charged that the conspiracy began "in or about 2010." (USA's Reply MSJ at 6, citing USA's Ex. 1, Doc. 60-3.) But Claimant Julio only admitted to involvement beginning in late 2013, and the sentencing court accepted his plea. The time discrepancy in the indictment further entrenches the factual dispute which the Court cannot resolve on summary judgment.

Julio's career history in his sentencing memorandum, arguing that "[i]t defies logic that after being incarcerated for nearly two years and then working as a spray painter for two years that Martinez would have funds sufficient to open a store in Chicago [in 1990]." (*Id.* at 18.) But this a closing argument, not grounds for summary judgment. The Government next asks the Court to draw an adverse inference from Claimant Julio's invocation of the Fifth Amendment in response to its interrogatory seeking the contact information of all person who "gave [him] bribe money in the 1980's." (*Id.* at 18–19.)

"[T]he Fifth Amendment does not forbid adverse inferences against civil litigants, including claimants in civil forfeiture proceedings, who assert the privilege against self-incrimination." *Arango v. U.S. Dep't of the Treasury*, 115 F.3d 922, 926 (11th Cir. 1997). However, "[c]ourts may not draw adverse inferences if it is the sole basis for the plaintiff's case or if it will cause the automatic entry of summary judgment." *Gov't Employees Ins. Co. v. KJ Chiropractic Ctr. LLC*, No. 6:12-CV-1138-ORL-40-DAB, 2015 WL 12839138, at *4 M.D. Fla. Feb. 16, 2015) (citing *FTC v. Transnet Wireless Corp.*, 506 F. Supp. 2d 1247, 1252 n.4 (S.D. Fla. 2007); *see also Pervis v. State Farm Fire & Cas. Co.*, 901 F.2d 944, 947 (11th Cir. 1990). Even so, "when adverse inferences are supported by other record evidence, such inferences may contribute to the court's reasoning in granting a plaintiff's motion for summary judgment." *Gov't Employees*, 2015 WL 12839138 at *4 (citing *FTC v. Global Mktg. Grp., Inc.*, 594 F. Supp. 2d 1281, 1288 (M.D. Fla. 2008)). The Court declines to draw an adverse

inference on summary judgment for three reasons. First, it would effectively lead to summary judgment as to all of Claimant Julio's property by inferring that everything he owns is traceable to proceeds of a crime he committed in the 1980's. Second, it would undercut the serious Rule 403 and 404 questions posed with respect to conduct stemming from Claimant Julio's 1986 conviction, questions which will likely need to be resolved in advance of trial. Finally, permitting an adverse inference to be drawn would effectively undermine the Court's Rule 37 sanction by allowing the Government to get at the conclusion it contends arises from the interview on summary judgment without relying on the interview itself.

The Government finally argues that Claimant Julio's proffered legitimate income does not support his ability to purchase the Defendant Vehicles as a matter of law. Martinez has stated that his income sources include the sale of buildings and the operation of two businesses. The Government concedes that Julio received "at most, $309,229.57 from the February 15, 2012, sale" of one property, citing a HUD-1 statement. (USA's Ex. 26.)[6] As noted above, Claimant Julio's tax returns show the following adjusted gross income:

---

[6] The Government contends that Claimant Julio has produced no evidence to support his contention he made during his custodial interview that he sold a building in Chicago that netted him $880,000. However, the Court has held factual disputes preclude giving dispositive effect to that interview on summary judgment. In any case, it does not appear that Claimant Julio is relying on that statement, and doing so at trial would likely open the door to the Government offering the remainder of the interview under the rule of completeness. Fed. R. Evid. 106.

| 2009 | -16,951 |
|------|---------|
| 2010 | 80,354 |
| 2011 | -11,665 |
| 2012 | -91,846 |
| 2013 | -46,129 |
| 2014 | 58,630 |

(Tax Returns, Doc. 60-28). The Tax Return of J Fox Enterprise LLC showed ordinary business income of $63,009 in 2014. (USA's Ex. 26.) The Government facilely adds these numbers together to conclude that Claimant Julio only had $35,402[7] in verifiable adjusted gross income in 2009 through 2014. Even including the $309,229.57 from the sale of the property, the Government argues, Claimant Julio cannot account for the purchase and improvement of three purchases of real property, including Foxxie Boutique's business location for $144,200, a residence on Azalea Drive for $295,050, and a residence on Grassy Trace for $71,000, let alone the Defendant Vehicles. (USA's Ex. 17; USA's Ex. 18; USA's Ex. 19.)[8]

At least three problems are posed with this approach. First, cash flow is not the same as adjusted gross income. *United States v. 120 S. Wareham Lane,*

---

[7] The Government's Motion appears to have a typographical error for Claimant's 2014 AGI, mistakenly listing it as $56,630.

[8] The Government relies heavily on the transcript of the interview of Claimant Julio for many of these expenses, and others, including a down payment on the Rivermark Court Property. Aside from the above issues with using the transcript, the Court notes that many of the numbers drawn from the interview appear to be estimates and round numbers based solely on Julio's memory.

*Schaumburg, Ill.*, No. 91 C 1950, 1996 WL 507244, at *3 (N.D. Ill. Sept. 4, 1996) (material issue of fact precluded summary judgment in forfeiture case where tax returns show cash flow substantially higher than reported adjusted gross income). While information about actual cash flow is likely contained in the tax returns themselves, the Court is not obliged to "scour the record" to ascertain the facts necessary to determine the absence of a factual dispute. *Cf. Tomasini v. Mt. Sinai Med. Ctr. of Fla.*, 315 F. Supp. 2d 1252, 1260 n.11 (S.D. Fla. 2004).

Second, it is also not clear from the record how much of the properties were purchased with cash versus with financing. The Government relies on Georgia Form PT-61 to provide the purchase price of the properties, but this form only indicates the total consideration paid for the property, not how much was paid in cash at closing by the seller. To the extent that the Government relies on the interview transcript for this purpose, there is a factual dispute as to its voluntariness, and the statements may not be conclusive by themselves in any event.

Third, the Government has acknowledged that at sentencing, Claimant Julio "had a supportive family, a 5-bedroom home, and a well-earning job at a company he owned." (Gov.'s Sentencing Memo at 2, USA's Ex. 5, Doc. 60-7.) Evidence in this case is consistent with Claimant Julio's sentencing argument

that he "has led a largely productive life in several business endeavors." (Def.'s Obj. to PSR and Sentencing Memo at 1, USA's Ex. 6, Doc. 60-8.)[9]

While "[a] court may enter summary judgment for the government in a civil forfeiture case [if] . . . the claimant offers evidence of a legitimate source for the seized property . . . [that] is so implausible that no reasonable jury could find in favor of the claimant," Claimant Julio's years of productively operating ostensibly legitimate businesses, combined with the Government's thin presentation of his financial condition, renders that outcome inappropriate here. *United States v. $86,020.00 in U.S. Currency*, 1 F. Supp. 2d 1034, 1040-41 (D. Ariz. 1997). The Government cannot meet its burden to show "by a preponderance of the evidence, that the property is subject to forfeiture" based solely on questionable math and normative lifestyle judgments. 18 U.S.C. § 983(c)(1); *see United States v. $125,938.62*, 537 F.3d 1287, 1294 (11th Cir. 2008) ("[T]he Government places considerable emphasis on Appellants' failure to produce business records proving the certificates were funded with proceeds from the [Appellant's] family's coffee or livestock business, rather than with embezzled funds. Appellants, however, were under no obligation to come forward with evidence of their rightful ownership. Rather, it was the Government's

---

[9] The Government answers this contention with portions of the transcript of the June 23, 2015 interview referencing Claimant Julio's financial instability, including foreclosure and poor credit. Even if the Court were to consider this evidence, it would only create further factual disputes precluding summary judgment.

burden to show the money used to purchase the certificates of deposit was derived from embezzled funds—and that it did not do.").[10]

Having concluded that factual disputes preclude giving dispositive weight to Claimant Julio's interview testimony and the DelValle plea agreement, the Court is left with Claimant Julio's plea declaration admitting to engaging in a drug conspiracy beginning in "late 2013." While the plea declaration does not identify when "late 2013" began, the parties appear to agree that it encompasses at least two of the Defendant Vehicles. (*See* USA's Br. MSJ at 14) ("Martinez purchased the Defendant 2014 Chevrolet on October 4, 2013, [and] the Defendant 2013 Buick on December 20, 2013 . . . which is during the conspiracy period for which he pleaded guilty."); (*accord* Clmts.' Resp. MSJ at 7–8) ("This is convenient considering all Defendant Vehicles were purchased after 2010 when DelValle says the conspiracy began but only two Defendant Vehicles were purchased in late 2013 or later (the Defendant 2014 Chevrolet and the Defendant 2013 Buick Regal).").[11]

---

[10] All that said, the Court only holds that the Government's evidence of Claimant Julio's financial condition itself is not enough in and of itself to draw an inference supporting a determination that all of the Defendant Vehicles are subject to forfeiture under the governing statute as a matter of law, particularly when the summary judgment standard requires construing factual disputes in the light most favorable to the non-movant and drawing all reasonable inferences in their favor. As the Court holds below, the Government is nonetheless entitled to summary judgment as to the Defendant Vehicles purchased during and after late 2013.

[11] The Government cites in a footnote to 21 U.S.C. § 853(d), which creates a rebuttable presumption for purchases made during the period of a criminal offense in *criminal forfeiture* cases. It does not appear that this statute applies to in rem civil asset forfeitures, and so it is not clear why the Government cited to it. This drive-by citation is akin to the Government's repeated citations to pre-CAFRA cases, which have complicated the Court's review of the cross motions for summary judgment.

The Eleventh Circuit has instructed this Court to evaluate evidence presented in a civil forfeiture case with "a common sense view to the realities of normal life." *United States v. $291,828.00 In U.S. Currency*, 536 F.3d 1234, 1237 (11th Cir. 2008) (quoting *United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1440 (11th Cir.1991) (pre-CAFRA)) (internal quotations omitted). The Government has introduced evidence that "for just the Defendant 2014 Chevrolet, the [already forfeited] 2013 Mazda, and the Defendant 2013 Buick," Claimant Julio "paid out of pocket, after trading in other vehicles, a total of more than $93,000." (USA's Br. MSJ at 10, Ex. 31 at ¶¶ 7–8.) In response to the Government's interrogatories, Claimant Julio could not provide any documents to support his claim that the Defendant Vehicles were purchased with legitimate sources. (USA's Ex. 26 ¶ 8.)[12] While under CAFRA, Claimants do not bear the initial burden of showing they legitimately obtained Defendant Vehicles, the Government's assertion that Claimant Julio purchased at least 3 cars for a total of almost $100,000 during a period of time where Claimant Julio was admittedly a part of a drug conspiracy cannot simply be left unanswered. The Court finds that the Government has provided sufficient factual evidence to meet its burden of showing that the Defendant 2014 Chevrolet and the Defendant 2013 Buick are traceable to the proceeds of a criminal offense, and by failing to provide evidence those vehicles were obtained legitimately, Claimants have failed to create a

---

[12] Claimant Julio objected to this discovery request in part on the grounds that the documents were seized by the DEA, but did not seek relief in response to the Government's Motion for Summary Judgment under Federal Rule of Civil Procedure 56(d) on the grounds that facts necessary to justify his opposition were unavailable to him.

dispute of fact as to this issue. Accordingly, the Government is entitled to summary judgment as to those two Defendant Vehicles.

## IV.   Conclusion

Based on the foregoing, the Court concludes that the Government has met its burden on summary judgment as to the following Defendant Vehicles:

| Nickname | Purchased |
| --- | --- |
| 2014 Chevrolet | Oct. 4, 2013 |
| 2013 Buick | Dec. 20, 2013 |

Genuine, material disputes of fact preclude granting summary judgment as to the following Defendant Vehicles:

| Nickname | Purchased |
| --- | --- |
| 2013 Lincoln | Apr. 5, 2013 |
| 1972 Buick | Sep. 30, 2011 |
| 1970 Buick #1 | ? |
| 1970 Buick #2 | Nov. 14, 2011 |
| 1970 Skylark | May 5, 2013 |
| 1970 Chevrolet | Feb. 27, 2012 |
| 1970 Pontiac | Jul. 16, 2012 |
| 1970 El Camino | Jul. 23, 2013 |
| Fisker Karma | Jul. 9, 2013 |

Accordingly, it is **ORDERED** that the Government's Motion for Summary Judgment [Doc. 60] is **GRANTED** as to Defendant 2014 Chevrolet Corvette Coupe, VIN 1G1YH2D7XE5102360 and Defendant 2013 Buick Regal GS, VIN 2G4GV5GV7D9218619 and **DENIED** as to the remaining vehicles. Claimant's Cross-Motion for Summary Judgment [Doc. 61] is **DENIED**.

The Court **ORDERS** the parties to attend mediation to be conducted by a Magistrate Judge of this Court.  The Clerk is **DIRECTED** to refer this action to the next available Magistrate Judge for the purpose of conducting the mediation.

The mediation is to be concluded within 50 days of this Order unless otherwise extended by the assigned Magistrate Judge. Counsel for Claimant Julio is **DIRECTED** to obtain settlement authority prior to the mediation. The Magistrate Judge should use reasonable efforts to pre-schedule a remote video conference for the mediation that allows for Julio Martinez's participation from the facility where he is incarcerated or at least a projected relevant portion of the mediation.[13] The Magistrate Judge may continue mediation as necessary to accommodate the policies and schedules of such facility.

No more than 7 days after the conclusion of the mediation, the parties are **DIRECTED** to file a status report with the Court. If the case is not settled at the mediation, the Parties are **FURTHER DIRECTED** to submit a proposed

---

[13] If after exhausting best efforts to arrange some measure of remote mediation participation, this proves impossible, the Magistrate Judge and parties will need to proceed without Mr. Martinez's personal participation.

consolidated pretrial order **NO LATER THAN** 35 days following the date the mediation is concluded.

All other deadlines in this action are **STAYED** and the case is **ADMINISTRATIVELY CLOSED** pending the outcome of the mediation.

**IT IS SO ORDERED** this 3rd day of November, 2020.

_____
**Amy Totenberg**
**United States District Judge**